IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-01851-RMR-KAS

JOHN MASTERS,

     Plaintiff,

v.

CRUZ SOTO,
DANNY SANCHEZ,
KEITH SCHULTZ,
NATHAN RUYBAL,
SHELLEY QUINTANA GALLEGOS, and
ANNE KELLY,

     Defendants.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

     This matter is before the Court on Defendant Cruz Soto's[1] **Motion to Dismiss** [#27],[2] Defendant Shelly Gallegos's **Motion to Dismiss** [#62], and Defendants Nathan Ruybal, Anne Kelly, Danny Sanchez, and Keith Schultz's **Motion to Dismiss** [#86] (collectively, the "Motions"). The Motions have been referred to the undersigned for a recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D.C.COLO.LCivR 72.1(c)(3). *See Orders Referring Motions* [#34, #63, #87]. On a liberal construction of Plaintiff's filings—which are far from models of clarity—Plaintiff appears

---

[1] The Second Amended Complaint [#16] names this Defendant "Soto Cruz." *See, e.g.*, *Second Am. Compl.* [#16] at 8. The Motion to Dismiss [#27] reveals that this Defendant's name is "Cruz Soto." Accordingly, the Court will refer to him as "Defendant Soto."

[2] "[#27]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Recommendation.

to have filed responses to Defendants Soto's and Gallegos's Motions, but he did not respond to the other Defendants' Motion. *See Motion to Quash Discovery Stay & Dismissal with Prejudice & to Proceed with Adjudication* [#36], *Motion to Quash Quintana-Gallegos Dismissal* [#73]. The Court has reviewed the Motions [#27, #62, #86], all related briefing, the entire case file, and the applicable law. For the reasons set forth below, the Court **recommends** the Motions [#27, #62, #86] be **GRANTED**.

## I. Background

Plaintiff John Masters, proceeding in this matter pro se,[3] asserts a litany of claims against Defendants arising from their allegedly unconstitutional conduct. Plaintiff's 117-page single-spaced Second Amended Complaint[4] [#16] weaves together factual allegations, extended summaries of unrelated case law, editorial commentary, historical digressions, and anecdotes bearing no apparent connection to the causes of actions he lodges. Nevertheless, and after a thorough and lengthy review, the Court adduces the following relevant allegations:

On September 17, 2021, Plaintiff was walking his dogs when an individual driving a large industrial truck drove onto Plaintiff's property. *Second Am. Compl.* [#16] at 5. Plaintiff alleges that this individual "jerk[ed] his steering wheel" towards Plaintiff and his dogs. *Id.* at 6. Plaintiff went back inside his home, retrieved a shotgun, walked outside,

---

[3] The Court must construe liberally the filings of a pro se litigant. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). In doing so, the Court should not be the pro se litigant's advocate, nor should the Court "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1175 (10th Cir. 1997) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

[4] Despite the docket labeling of "Second Amended Complaint," this is actually the *third* amended complaint. However, to avoid confusion, the Court will continue to refer to the operative complaint as the Second Amended Complaint.

and fired three shots into the air. *Id.* This incident ultimately led to Plaintiff's arrest and conviction.

Plaintiff brings individual capacity claims against state officials Cruz Soto, Shelly Gallegos, Nathan Ruybal, Keith Schultz, Anne Kelly, and Danny Sanchez arising from his arrest, prosecution, and conviction. He sues each Defendant pursuant to 42 U.S.C. § 1983 in their individual capacities seeking only monetary relief. *See id.* at 116 (requesting monetary relief against Defendants "in their personal individual capacity").

Through the instant Motions [#27, #62, #86], all Defendants move to dismiss Plaintiff's Second Amended Complaint [#16], arguing immunity defenses, failure to state a claim, and improper service of process. The Court analyzes each motion independently.

## II. Applicable Law

### A.    Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a claim where the plaintiff has "fail[ed] to state a claim upon which relief can be granted." The Rule 12(b)(6) standard tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). "A complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Santa Fe All. for Pub. Health & Safety v. City of Santa Fe*, 993 F.3d 802, 811 (10th Cir. 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "When the complaint includes 'well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Carraway v. State Farm & Cas. Co.*, No. 22-1370, 2023 WL 5374393, at *4 (10th Cir. Aug. 22, 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

"A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted). "[D]ismissal under Rule 12(b)(6) is appropriate if the complaint alone is legally insufficient to state a claim." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1104-05 (10th Cir. 2017). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial[.]" *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

Further, "[b]ecause § 1983 . . . [is a] vehicle[] for imposing personal liability on government officials, [the Tenth Circuit] ha[s] stressed the need for careful attention to particulars, especially in lawsuits involving multiple defendants." *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013). Therefore, when bringing a § 1983 claim, a plaintiff must "'make clear exactly *who* is alleged to have done *what* to *whom*, . . . as distinguished from collective allegations[.]'" *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011) (quoting *Robbins v. Okla. ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1250 (10th Cir. 2008)). "When various officials have taken different actions with respect to a plaintiff, the plaintiff's facile passive-voice showing that his rights 'were violated' will not suffice." *Pahls*, 718 F.3d at 1225-26. "Likewise insufficient is a plaintiff's more active-voice yet undifferentiated contention that 'defendants' infringed his rights." *Id.* at 1226. Instead, the plaintiff must "identify specific actions taken by particular defendants" in order to state a § 1983 claim. *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 532 (10th Cir. 1998).

**B.**    **Rule 12(b)(5)**

A motion under Rule 12(b)(5) seeks dismissal based on insufficient service of process. In other words, "[a] Rule 12(b)(5) motion . . . challenges the mode or lack of delivery of a summons and complaint." *Gallan v. Bloom Bus. Jets, LLC*, 480 F. Supp. 3d 1173, 1178 (D. Colo. 2020) (citation and internal quotation marks omitted). In response to a Rule 12(b)(5) motion, the "[p]laintiff must demonstrate that the procedure employed by him to effect service satisfied the requirements of Rule 4 of the Federal Rules of Civil Procedure." *Sarnella v. Kuhns*, No. 17-cv-02126-WYD-STV, 2018 WL 1444210, at *1 (D. Colo. Mar. 23, 2018) (citation and internal quotation marks omitted). Where service of process is insufficient, a court lacks personal jurisdiction over a defendant. *See id.*

**C.**    **Qualified Immunity**

A qualified immunity defense "protects government officials from civil liability so long as 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Arnold v. City of Olathe*, 35 F.4th 778, 788 (10th Cir. 2022) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "[Q]ualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *City of Tahlequah v. Bond*, 595 U.S. 9, 12 (2021) (per curiam) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018)). To determine whether qualified immunity applies, the Court considers (1) whether "the officers' alleged conduct violated a constitutional right," and, if so, (2) whether "it was clearly established at the time of the violation, such that every reasonable official would have understood, that such conduct constituted a violation of that right." *Wise v. Caffey*, 72 F.4th 1199, 1205 (10th Cir. 2023) (citation and internal quotation marks omitted). If the plaintiff fails to

demonstrate either requirement, the court must grant the defendant qualified immunity and need not undertake additional analysis. *Gross v. Pirtle*, 245 F.3d 1151, 1156 (10th Cir. 2001).

## III. Analysis

### A.    Defendant Soto's Motion to Dismiss [#27]

Plaintiff asserts various § 1983 claims against Defendant Soto in his individual capacity. *See Second Am. Compl.* [#16] at 50 ("I bring this § 1983 suit against [Defendant Soto] in his personal capacity."). Specifically, Plaintiff appears to assert that Defendant Soto violated his (1) Fourteenth Amendment, (2) Sixth Amendment, (3) Second Amendment, (4) Ninth Amendment,[5] (5) Fifth Amendment,[6] and (6) Fourth Amendment rights. *Id.* These claims arise from the September 17, 2021 events that ultimately led to Plaintiff's arrest. *Id.* at 50-56. Plaintiff identifies Defendant Soto, the Undersheriff of Costilla County, as the "main arresting officer[.]" *Id.* at 17.

Defendant Soto filed a Motion to Dismiss [#27], in which he argues that Plaintiff's § 1983 claims against him are time barred. *See Motion* [#27] at 4-5. Defendant Soto further argues that, even if the claims are not time barred, he is nonetheless entitled to qualified immunity because Plaintiff failed to establish that Defendant Soto violated a

---

[5] Plaintiff's claim that Defendant Soto violated his Ninth Amendment rights is not a cognizable claim. The Ninth Amendment is not an independent source of individual rights but rather a rule of construction. *See Holmes v. Town of Silver City*, 826 F. App'x 678, 681-82 (10th Cir. 2020) (affirming summary judgment on § 1983 claim based on an alleged Ninth Amendment violation).

[6] Plaintiff alleges that Defendant Soto violated his Fifth Amendment rights by failing to advise him of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). *See Second Am. Compl.* [#16] at 50. However, "[i]t is well settled that an alleged failure to warn an individual of their *Miranda* rights alone cannot form the basis of a § 1983 claim for liability." *Walker v. Wegener*, 11-cv-03238-KMT, 2012 WL 4359365, at *13 (D. Colo. Aug. 30, 2012). The only available remedy "is the suppression of an incriminating statement." *Starr v. Downs*, 117 F. App'x 64, 66 n.1 (10th Cir. 2004) (quoted in *Walker*, 2012 WL 4359365, at *13).

clearly established constitutional right. *See id*. at 5-12. Finally, Defendant Soto argues that Plaintiff failed to properly and timely serve him, and, as a result, the claims against him must be dismissed in accordance with Rule 12(b)(5) and Rule 4(m). *Id.* at 12-15.

### 1. Whether Plaintiff Failed to Timely and Properly Effectuate Service of Process

Because "[p]roper service is a jurisdictional prerequisite to litigation," *Sarnella*, 2018 WL 1444210, at *1, the Court first addresses Defendant Soto's Rule 4 and Rule 12(b)(5) arguments. Defendant Soto argues that Plaintiff failed to serve a summons and the operative complaint; instead, Plaintiff served Defendant Soto with a copy of the original complaint. *Motion* [#27] at 12-13.

"A signed return of service constitutes prima facie evidence of valid service 'which can be overcome only by strong and convincing evidence.'" *Dittimus v. Bond*, No. 12-cv-03010-MSK-KMT, 2013 WL 4496432, at *2 (D. Colo. Aug. 22, 2013 (quoting *O'Brien v. R.J. O'Brien & Assocs.*, 998 F.2d 1394, 1398 (7th Cir. 1993)). "The parties may submit affidavits and other documentary evidence for the Court's consideration, and [a] [p]laintiff is entitled to the benefit of any factual doubt." *Bey v. Clark*, No. 17-cv-01594-WJM-MEH, 2018 WL 994048, at *5 (D. Colo. Feb. 21, 2018) (quoting *Fisher v. Lynch*, 531 F. Supp. 2d 1253, 1260 (D. Kan. 2008)).

Rule 4(c)(1) of the Federal Rules of Civil Procedure provides that "[a] summons must be served with a copy of the complaint." Additionally, Rule 4(m) requires a plaintiff to serve a defendant "within 90 days after the complaint is filed". If that does not happen, "the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." FED. R. CIV. P. 4(m).

Defendant Soto challenges service on two grounds[7]: (1) Plaintiff failed to serve a copy of the operative complaint, *i.e.*, the Second Amended Complaint; and (2) Plaintiff failed to serve Defendant Soto timely. *Motion* [#27] at 12-14.

To resolve this issue, the Court must first review a bit of the murky procedural history. The Second Amended Complaint [#16], which was docketed on October 9, 2024, is the product of two orders for Plaintiff to cure deficiencies in his pleadings. *See Pleadings* [#1, #4, #6, #16]; *Deficiency Orders* [#3, #11]. When the Second Amended Complaint was docketed, it was labeled "Judicial Notice" in line with the second page of that filing. (The first page of that filing is captioned "Federal Court Order".) On November 13, 2024, the Clerk of Court issued a letter to Plaintiff, accompanied by issued summonses, a copy of Federal Rule of Civil Procedure 4, and direction to serve the "summons and complaint promptly and file [the] return[s] of service with the court." *Letter* [#21]. At that time, according to the docket, the First Amended Complaint [#6] was the operative pleading because docket entry #16 was still labeled "Judicial Notice." About two weeks later, on Plaintiff's motion, the Court directed the Clerk of Court to rename [#16] to "Second Amended Complaint." *See Minute Order* [#22].

The executed summons reveals that Defendant Soto was served with the summons on February 24, 2025. *Executed Summons* [#24] at 6; [#29] at 1. Therefore, at the time of service, the Second Amended Complaint was the operative complaint. The executed summons, however, does not indicate that Defendant Soto received any complaint with the summons, even though the cover page to the issued summons

---

[7] In his opening brief, Defendant Soto also argued that the process server failed to serve a summons; however, he appears to have withdrawn that argument in his reply brief. *Compare Motion* [#27] at 13 *with Reply* [#43] at 4-5.

indicates that a complaint should be attached to it. *See Summons* [#21-1] at 1 ("you must serve on the plaintiff an answer to the attached complaint").

In response, Plaintiff provides a screen shot of a purported email from him to the process server. *See Response* [#36] at 11. In that email, Plaintiff states,

> I have attached 2 things pertinent to process serving. I have attached the complaint "2nd Amended Complaint" . . . . The other attachment is the 'proof of service' form that the District Court in Denver issued.

*Id*. The screen shot indicates that the email contained two file attachments: the Second Amended Complaint and the Summons. *Id*.

Based on the Plaintiff's documentary evidence, the Court concludes that he is entitled to the benefit of any factual doubt. *See Bey*, 2018 WL 994048, at *5. Therefore, the Court finds that Defendant Soto was served a copy of the Second Amended Complaint on February 24, 2025.

Next, the Court considers whether Plaintiff timely served Defendant Soto. As mentioned, the Clerk of Court issued a letter to Plaintiff, accompanied by the issued summonses, on November 13, 2024. *Letter* [#21]. Plaintiff argues that the 90-day service clock did not begin to run until November 26, 2024, when the operative complaint was renamed "Second Amended Complaint". *See Response* [#36] at 12. Defendant Soto argues, however, that the 90-day clock began on the Second Amended Complaint's filing date. *Motion* [#27] at 13-14; *Reply* [#43] at 4-5. In Defendant Soto's view, Plaintiff needed to serve the Second Amended Complaint by January 7, 2025. Therefore, Defendant Soto argues that service on February 24, 2025, was untimely.

The Court agrees with Defendant Soto. Plaintiff needed to effectuate service of the Summons and Second Amended Complaint by January 7, 2025. The language of Fed.

R. Civ. P. 4(m) clearly and unequivocally sets a service deadline of "90 days after the complaint is *filed*[.]" (emphasis added).

Even where a plaintiff has not established good cause for failing to serve a defendant within 90 days from a complaint's filing, a court must consider whether a permissive extension of time may be warranted. *Espinoza v. United States*, 52 F.3d 838, 841-42 (10th Cir. 1995). The determination of whether to grant a permissive extension of time is "within the district court's discretion." *Id*. A court should consider (1) the complex requirements of multiple service; (2) the statute of limitations; (3) the plaintiff's pro se status; (4) the danger of prejudice to the defendant; and (5) the length of delay, when considering whether to extend the time for service. *Est. of Goodwin v. Connell*, 376 F. Supp. 3d 1133, 1144, 1153 (D. Colo. 2019); *Espinoza*, 52 F.3d at 842. Here, as discussed in greater detail below, Plaintiff's claims are time-barred. For that reason, the Court finds that a permissive extension is not warranted. Accordingly, the Court **recommends** that Defendant Soto's Motion [#27] be **granted** to the extent it seeks dismissal on untimely service grounds.

### 2.    Whether Plaintiff's Claims Are Time Barred

"The statute of limitations period for a § 1983 claim is dictated by the personal injury statute of limitations in the state in which the claim arose." *Schell v. Chief Just. & Justs. of Okla. Sup. Ct.*, 11 F.4th 1178, 1191 (10th Cir. 2021) (quoting *McCarty v. Gilchrist*, 646 F.3d 1281, 1289 (10th Cir. 2011)). The Tenth Circuit has recognized that the statute of limitations applied to § 1983 claims in Colorado is two years. *See Blake v. Dickason,* 997 F.2d 749, 750 (10th Cir. 1993).

Although the relevant limitations period is a question of state law, federal law, on the other hand, controls when a claim accrues. *Price v. Philpot,* 420 F.3d 1158, 1162

(10th Cir. 2005). "Section 1983 claims accrue, for the purpose of the statute of limitations, when the plaintiff knows or has reason to know of the injury which is the basis of his actions." *Hunt v. Bennett,* 17 F.3d 1263, 1266 (10th Cir.1994) (citation and quotation marks omitted). "Claims arising out of police actions toward a criminal suspect, such as arrest, interrogation, or search and seizure, are presumed to have accrued when the actions actually occur." *Beck v. City of Muskogee Police Dep't,* 195 F.3d 553, 558 (10th Cir. 1999).

Here, the Second Amended Complaint makes clear, on its face, that Plaintiff's claims against Defendant Soto are time barred. Plaintiff's claims arise from events that occurred on September 17, 2021. *See, e.g.*, *Second Am. Compl.* [#16] at 2 ("A series of events happened on September 17, 2021[.]"). As a result, Plaintiff had until September 17, 2023, to timely assert his claims. However, Plaintiff did not file the instant lawsuit until July 2, 2024, nearly ten months after the limitations period passed. *See Petition* [#1].

Plaintiff appears to argue that the claims accrued on April 7, 2023—the last day of his criminal trial, which ultimately ended in his conviction. *Response* [#36] at 8. He argues that this is the correct accrual date because "Defendant [Soto] could have testified, or brought the witnesses subpoenaed in for their testimony[.]" *Id.* at 8. Defendant Soto argues that the United States Supreme Court's decision in *Wallace v. Kato,* 549 U.S. 384, 386 (2007), bars this argument. *Reply* [#43] at 2.

In *Wallace*, the plaintiff filed suit asserting § 1983 claims under the Fourth Amendment regarding his unlawful arrest. 549 U.S. at 386. The trial court dismissed the suit at the summary judgment stage after determining that the plaintiff's claims were time barred. *Id.* at 387. The Court upheld the trial court's ruling, noting accrual occurs "when

the plaintiff has 'a complete and present cause of action.'" *Id.* at 388 (quoting *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal.,* 522 U.S. 192, 201 (1997)). The Court continued, "[t]here can be no dispute that petitioner could have filed suit as soon as the allegedly wrongful arrest occurred, subjecting him to the harm of involuntary detention, so the statute of limitations would normally commence to run from that date." *Id.* Therefore, the Supreme Court's guidance in *Wallace* dispels Plaintiff's contention that his claims began to accrue on the date his trial ended.

To the extent Plaintiff's claims can be construed as relating to an unlawful criminal conviction in which Defendant Soto personally participated, those claims are nonetheless barred by the Supreme Court's guidance in *Heck v. Humphrey,* 512 U.S. 477, 486-87 (1994). In *Heck,* "the Supreme Court was concerned with not allowing a party to collaterally attack his or her criminal conviction through the vehicle of a civil suit under 42 U.S.C. § 1983." *Bryner v. Utah*, 429 F. App'x 739, 742 (10th Cir. 2011). Thus, the Court held that to recover damages under § 1983 for an allegedly unconstitutional conviction or imprisonment, a plaintiff must show "that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486-87. Plaintiff has not made such a showing here. *See generally Second Am. Compl.* [#16]. Accordingly, his claims are subject to an independent basis for dismissal under *Heck*.

Therefore, the Court **recommends** that Defendant Soto's Motion to Dismiss [#27] be **granted** and Plaintiff's claims against Defendant Soto be **dismissed with prejudice**.

*McGowan v. Wal-Mart Stores*, 757 F. App'x 786, 788 n.3 (10th Cir. 2019) ("A dismissal based on timeliness would ordinarily be with prejudice").

**B.        Defendant Gallegos's Motion to Dismiss [#62]**

As to Defendant Gallegos, the Clerk of Court for Costilla Combined Court in Colorado's 12th Judicial District, Plaintiff alleges the following:

> I filled out all of the paperwork, & paid the money, but the transcript company sent the transcripts to [Defendant Gallegos], & then I didn't see them. [Defendant Gallegos] deprived me of a right to appeal, which is a denial of due process (5th & 14th Amendment), because I didn't have the transcripts prior to the appeal. It's also tampering with evidence, which is a crime in Colorado as well.

*Second Am. Compl.* [#16] at 75. Although Defendant Gallegos notes that, as of the date of filing her Motion to Dismiss [#62], "service has not been made on [her]," she agreed to waive service of process "in the interests of judicial economy." *Motion* [#62] at 1-2. Defendant Gallegos asserts four reasons for dismissal: (1) Plaintiff's claims are time barred, (2) sovereign immunity shields her to the extent she is sued in her official capacity, (3) she is qualifiedly immune in her individual capacity, and (4) Plaintiff otherwise fails to state a claim. *See id.* at 5-11. Plaintiff filed a Motion to Quash [#73], which the Court construes as a Response. Defendant Gallegos filed a Reply [#78].

**1.        Whether Plaintiff's Claims Against Defendant Gallegos are Time Barred**

As noted, Plaintiff's lawsuit generally concerns his arrest on September 17, 2021. However, his claims against Defendant Gallegos appear to have arisen *after* this date, when she allegedly deprived Plaintiff of his "right to [an] appeal" by failing to provide him with transcripts concerning his criminal proceedings. *Second Am. Compl.* [#16] at 75. "[W]here a complaint does not clearly set forth the date that the injury was discovered, it is error for a district court to dismiss the complaint as barred by the statute of limitations."

*Garner v. Int'l Union, United Auto., Aerospace & Agri. Implement Workers of Am.*, No. 21-cv-01860-CMA-STV, 2022 WL 17547929, at *5 (D. Colo. Nov. 3, 2022). Because the face of Plaintiff's Second Amended Complaint [#16] is not clear as to when Defendant Gallegos's alleged conduct occurred, the Court must reject this argument. *Wensleydale Way, Inc. v. Fleet Car Lease Inc*, No. 17-cv-02863-RBJ, 2019 WL 295674, at *3-4 (D. Colo. Jan. 23, 2019) (declining to dismiss on statute of limitations grounds where the claim accrual date was not clear on the face of the complaint).

### 2. Qualified Immunity – Defendant Gallegos

Although Defendant Gallegos asserts sovereign immunity to the extent she is sued in her official capacity, the Court construes Plaintiff's Second Amended Complaint [#16] as only seeking monetary damages against Defendants in their individual capacities. *See Second Am. Compl.* [#16] at 116 (asserting in a section labeled, "Relief," "Monetary: For the individuals who acted with state authority themselves in their personal individual capacity, I bring 1983 suit for $25,000 a piece, & for punitive damages, as the jury sees fit.").

Defendant Gallegos argues that, as a state actor, she is qualifiedly immune from Plaintiff's claims against her. *Motion* [#62] at 10-11. "Unless the plaintiff carries [his] twofold burden [concerning qualified immunity], the defendant prevails." *Reynolds v. Powell*, 370 F.3d 1028, 1030 (10th Cir. 2004). In response, Plaintiff argues that "[q]ualified [i]mmunity principles aren't [c]onstitutional" and that the plain language of 42 U.S.C. § 1983 "makes no mention of defenses or immunities." *Response* [#73] at 7.

The Court finds that Plaintiff failed to plausibly allege that Defendant Gallegos's conduct violated a constitutional right. *See Wise*, 72 F.4th at 1205. In the Second Amended Complaint, Plaintiff alleges that Defendant Gallegos "deprived [him] of a right

to appeal, which is a denial of due process (5th & 14th Amendment)." *Second Am. Compl.*
[#16] at 75. But the face of the Second Amended Complaint reveals that Plaintiff appealed
his conviction to the Colorado Court of Appeals. *Id.* at 2-3 ("I believe the 3-day Jury Trial
was April 5, 6, 7, 2023. An Appeal with 40 or so reversible errors was sent shortly
afterwards to the Ralph L. Carr Colorado Appeals Court in Denver, within the allot[t]ed
time limit."). Thus, the Second Amended Complaint does not plausibly allege that Plaintiff
was deprived of the right to appeal his conviction.

In the Response [#73], Plaintiff further explains his contention: "Without the written
transcripts, [Plaintiff] was forced to write up an appeal based upon his memory only. While
the general gist of the meanings of the words uttered in court were used, they weren't
quoted verbatim." *Response* [#73] at 1. Thus, Plaintiff appears to argue that the alleged
withholding of transcripts was a functional denial of his right to appeal, which he claims is
protected under the Fourteenth Amendment.

To be sure, "if state statutes provide for appeals from convictions in criminal cases,
the due process and equal protection clauses of the 14th Amendment require that the
right shall not be limited to those who are able to afford the expense of an appeal."
*Patterson v. Medberry*, 290 F.2d 275, 277 (10th Cir. 1961). Accordingly, "the state, upon
a timely request, must furnish an indigent defendant in a criminal case with a record on
appeal which is sufficient for an adequate appellate review of his conviction." *Id.* But even
that limited right is extinguished where a criminal defendant fails to follow the proper
procedures to timely establish indigency. *See McKee v. Page*, 435 F.2d 689, 691 (10th
Cir. 1970).

Here, Plaintiff has failed to make the requisite showing of a constitutional violation to defeat Defendant Gallegos's assertion of qualified immunity. First, there is no indication that he was deprived of the transcripts based on indigency. *See Heinemann v. Murphy*, 326 F. App'x 455, 463 (10th Cir. 2009). In fact, Plaintiff alleges that he paid for copies of the transcripts. *Second Am. Compl.* [#16] at 75. Second, Plaintiff has failed to allege that the transcripts' absence impacted the resolution of the issues presented on direct appeal. *See Heinemann*, 326 F. App'x at 463. Thus, Plaintiff has failed to allege how Defendant Gallegos's alleged act of withholding the transcripts violated the Fourteenth Amendment. Nor does he address how his claimed right to the transcripts, in the absence of a showing of indigency, was clearly established at the time of Defendant Gallegos' allegedly unconstitutional conduct. *See Vigil v. Tweed*, No. 18-829 SCY/JFR, 2021 WL 2953186, at *4 (D.N.M. July 14, 2021) (finding plaintiff forfeited his legal arguments where he did not address either prong of the qualified immunity test).

Accordingly, the Court **recommends** that the Motion [#62] be **granted** and that the claims against Defendant Gallegos be **dismissed without prejudice**. *See Shash v. City of Pueblo*, 770 F. Supp. 3d 1279, 1301 (D. Colo. 2025) (dismissing without prejudice constitutional claim where a defendant was entitled to qualified immunity).

## C.    Defendants Ruybal, Kelly, Sanchez, and Schultz's Motion to Dismiss [#86]

Plaintiff also asserts § 1983 claims against the following Defendants: (1) Conejos County Clerk & Recorder Nathan Ruybal for violating his Fourteenth Amendment rights; (2) 12th Judicial District Attorney Anne Kelly for violating his Second, Fourth, Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendment rights; (3) Costilla County Sheriff Danny Sanchez for violating his Sixth and Fourteenth Amendment rights; and (4) Costilla County

16

Sheriff's Deputy Keith Schultz for violating his Second, Fifth, Ninth, and Fourteenth Amendment rights. *Second Am. Compl.* [#16] at 87. He sues them in their individual capacities. *Id.* at 46, 56, 74.

Through their Motion [#86],[8] these Defendants argue that: (1) Defendant Kelly is entitled to absolute immunity, (2) Defendants Ruybal, Sanchez, and Schultz are entitled to qualified immunity, and (3) Plaintiff failed to properly effectuate service. *Motion* [#86] at 4-18. Additionally, Defendant Ruybal argues that Plaintiff failed to serve the summons; Defendant Kelly argues that Plaintiff failed to serve her personally but served her chief investigator; and Defendants Sanchez and Schultz argue that Plaintiff failed to serve them personally. *Motion* [#86] at 17. Finally, they argue that Plaintiff failed to serve them timely. *Id.* at 18. Plaintiff did not respond.

### 1.    Whether Plaintiff Effectuated Service of Process

The Court first addresses service of process on Defendant Ruybal. The executed summons reveals that Defendant Ruybal was personally served with the summons on February 21, 2025. *Executed Summons* [#24] at 8 (process server attesting to having "personally served the summons"). Though his attorney states, "it is counsel's understanding that . . . [Plaintiff] failed to serve Mr. Ruybal with a summons," *Motion* [#86] at 17, Plaintiff's documentary evidence suggests otherwise. *See Executed Summons* [#24] at 8; *Response* [#38] at 11 (containing Plaintiff's instructions to the process server for delivery of complaint and summons to 11 individuals). Therefore, the Court concludes that Plaintiff is entitled to the benefit of any factual doubt and that Defendant Ruybal received the summons. *See Bey*, 2018 WL 994048, at *5; *see also Himoinsa Power Sys.,*

---

[8] Defendants' Motion [#86] exceeds the 15-page limitation as provided in RMR Civ. Practice Standard 10.1(c)(1). Defendants are directed to move for a page-limitation extension in the future.

*Inc. v. Power Link Mach. Co.*, No. 08-2601, 2010 WL 11565325, at *3 (D. Kan. Aug. 24,
2010) (resolving conflicting statements regarding service of process in favor of the plaintiff
upon "accept[ing] the affidavits of the process servers who, after all, 'have no dog' in the
dispute.").

Next the Court addresses service on Defendant Kelly through her office's chief
investigator. Federal Rule of Civil Procedure 4(e)(2) provides that service on an individual
may be effectuated by "delivering a copy of the summons and the complaint to the
individual personally;" "leaving a copy of each at the individual's dwelling or usual place
of abode with someone of suitable age and discretion who resides there;" or "delivering
a copy of each to an agent authorized by appointment or by law to receive service of
process." FED. R. CIV. P. 4(e)(2). Rule 4(e)(1) also provides that service may be
effectuated by following state law for service of either the state "where the district court is
located or where service is made[.]" FED. R. CIV. P. 4(e)(1).

Colorado law authorizes service upon a natural person of 18 years of age or older
as follows: (1) "by delivering a copy [of the summons and complaint] to the person;" (2)
"by leaving a copy thereof at the person's usual place of abode, with any person whose
age is eighteen years or older and who is a member of the person's family, or at the
person's usual workplace, with the person's supervisor, secretary, administrative
assistant, bookkeeper, human resources representative or managing agent," or (3) "by
delivering a copy to a person authorized by appointment or by law to receive service of
process." COLO. R. CIV. P. 4(e)(1).

In sum, no provision of federal or Colorado law expressly permits service on the
chief investigator at an individual's workplace, and nothing in the record otherwise

suggests that the chief investigator is authorized to accept service. Therefore, the Court concludes that Plaintiff failed to effectuate service of process on Defendant Kelly. Consequently, the Court lacks personal jurisdiction over her and the claims against her should be dismissed on that basis.

Finally, the Court addresses Defendants Sanchez's and Schultz's arguments that they were not personally served—an argument based on "counsel's understanding." *Motion* [#86] at 17. The executed summonses reflect that the process server personally served these two defendants. *See Executed Summonses* [#24] at 2, 3; *see also Response* [#38] at 11. Once again, the Court accords greater weight to the signed and notarized executed summonses than to "counsel's understanding." Giving Plaintiff the benefit of the doubt, the Court finds that Defendants Sanchez and Schultz were personally served.

### 2.    Whether Plaintiff Timely Served Defendants Ruybal, Kelly, Sanchez, and Schultz and the Propriety of a Permissive Extension

Defendants allege that Plaintiff failed to timely serve them in accordance with Rule 4. *See Motion* [#86] at 17-18. For the same reasons articulated in connection with Defendant Soto's Motion [#27], *see supra* section III(A)(1), the Court finds that Defendants Ruybal, Kelly (her chief investigator, rather), Sanchez, and Schultz were untimely served on February 21, February 24, and February 25, 2025. *See Executed Summonses* [#24] at 1, 2, 3, 5. Thus, the Court next considers whether a permissive extension of time may be warranted. *Espinoza*, 52 F.3d at 841-42.

First, because Plaintiff proceeds pro se, the Court makes an observation about the propriety of a permissive extension with respect to Defendant Kelly, even though the Court lacks personal jurisdiction over Defendant Kelly.

Plaintiff's allegations regarding Defendant Kelly arise from her prosecution of him in the underlying criminal proceeding. *See Second Am. Compl.* [#16]. Plaintiff challenges several decisions she made with respect to witness testimony and evidentiary objections she made during trial. *Id.* at 25, 41-42, 88. Plaintiff alleges that Defendant Kelly "maliciously prosecuted" him and that she violated his Second, Fourth, Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendment rights. *Id.* at 87, 91, 101. Defendant Kelly argues that these claims are barred by absolute immunity. *Motion* [#86] at 4. She is correct.

 "[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his [or her] role as an advocate for the State, are entitled to the protections of absolute immunity." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). "[I]t is well-established law that '[p]rosecutors are entitled to absolute immunity' for anything they do in their roles as advocates, including their 'decisions to prosecute.'" *Warnick v. Cooley*, 895 F.3d 746, 751 (10th Cir. 2018) (quoting *Nielander v. Bd. of Cnty. Comm'rs*, 582 F.3d 1155, 1164 (10th Cir. 2009)). "To qualify for absolute immunity, . . . [the defendant's] action must be 'closely associated with the judicial process.'" *Mink v. Suthers*, 482 F.3d 1244, 1260 (10th Cir. 2007) (quoting *Burns v. Reed*, 500 U.S. 478, 495 (1991)).

Plaintiff's allegations regarding Defendant Kelly's decisions in preparation for and during trial fall squarely within the protected bounds of absolute immunity. Thus, Defendant Kelly is entitled to absolute prosecutorial immunity. Therefore, no circumstances warrant a permissive extension of time to effectuate service of process on her. *See Reid v. Evans*, Nos. 3:22-CV-46 (LAG), 3:22-CV-53 (LAG), 2023 WL 364109, at *8 (M.D. Ga. Jan. 23, 2023) (finding no basis to extend time for service of process on

federal judges where claims against them were barred by absolute immunity). Accordingly, the Court **recommends** that the Motion [#86] be **granted** and that the claims against Defendant Kelly be **dismissed with prejudice**. *See Freeman v. Ward*, No. 23-cv-01985-CNS-KAS, 2024 WL 6475133, at *6 (D. Colo. Feb. 13, 2024) (recommending dismissal with prejudice of claim barred by absolute prosecutorial immunity), *report and recommendation adopted*, 2024 WL 6475181 (D. Colo. Mar. 19, 2024).

Second, a permissive extension with respect to Defendants Ruybal, Sanchez, and Schultz is not warranted because, as discussed in greater detail below, these defendants are entitled to qualified immunity. *Cf. Williams v. Bd. of Cnty. Comm'rs of Grady Cnty.*, No. CIV-13-759-M, 2014 WL 5039821, at *6 (W.D. Okla. Oct. 8, 2014) (granting permissive extension upon rejecting qualified immunity-based motion dismiss); *but cf. Zamora v. City of Belen*, No. CIV 03-743 JB/RLP, 2004 WL 3426121, at *4 (D.N.M. Aug. 9, 2004) (granting permissive extension and declining to consider qualified immunity and sovereign immunity arguments that were not raised in a motion under Rule 12(b)(1), 12(b)(6), or 56).

### 3.    Qualified Immunity - Defendants Ruybal, Sanchez, and Schultz

Plaintiff alleges that Defendant Ruybal violated his Fourteenth Amendment rights when he "didn't uphold [Plaintiff's] right to vote." *See Second Am. Compl.* [#16] at 74. Plaintiff asserts that Defendant Sanchez "didn't deliver any of the subpoenas that [he] had paid for" and that Defendant Sanchez "failed to train, supervise, and/or discipline his deputies." *Id.* at 43, 57-58. Finally, Plaintiff alleges that Defendant Schultz failed to properly investigate a series of crimes that Plaintiff reported. *Id.* at 46. Defendants Schultz, Sanchez, and Ruybal contend that they are entitled to qualified immunity. *See Motion* [#86] at 7-16.

Plaintiff did not file a response to the Motion [#86]. Thus, Plaintiff has made no effort to overcome the presumption of qualified immunity. He has not demonstrated that his allegations amount to a violation of a specific constitutional or statutory provision. Nor has he shown, through citations to legal authority, that any violated right was clearly established at the time of Defendants' conduct. *See Lewis v. Stancil*, No. 23-cv-01917-NYW-STV, 2025 WL 2916374, at *2 (D. Colo. Oct. 14, 2025) (granting defendant's motion to dismiss based on qualified immunity); *see Gutierrez v. Cobos*, 841 F.3d 895, 902-03 (10th Cir. 2016) (affirming summary judgment on excessive force claims where "counsel did not make any legal argument in the district court to rebut qualified immunity"). Accordingly, the Court **recommends** that the Motion [#86] be **granted** and Plaintiff's claims against Defendants Ruybal, Schultz, and Sanchez be **dismissed without prejudice**. *See Pittman v. Stancil*, No. 23-cv-03282-DDD-KAS, 2025 WL 2937104, at *7 (D. Colo. Aug. 18, 2025) (recommending dismissal without prejudice in light of qualified immunity), *report and recommendation adopted*, 2025 WL 2937103 (D. Colo. Sept. 12, 2025).

### IV. Conclusion

Based on the foregoing,

IT IS HEREBY **RECOMMENDED** that Defendant Soto's Motion to Dismiss [#27] be **GRANTED** and Plaintiff's claims against Defendant Soto be **DISMISSED with prejudice**.

IT IS FURTHER **RECOMMENDED** that Defendant Gallegos's Motion to Dismiss [#62] be **GRANTED** and Plaintiff's claims against Defendant Gallegos be **DISMISSED without prejudice**.

IT IS FURTHER **RECOMMENDED** that Defendants Sanchez, Ruybal, Schultz, and Kelly's Motion to Dismiss [#86] be **GRANTED** and the claims against Defendant Kelly be **DISMISSED with prejudice** and the claims against Defendants Sanchez, Ruybal, and Schultz be **DISMISSED without prejudice**.

IT IS FURTHER **ORDERED** that any party may file objections **within 14 days** of service of this Recommendation. In relevant part, Fed. R. Civ. P. 72(b)(2) provides that, "within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). The objection must be "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute." *Id.* "[A] party who fails to make a timely objection to the magistrate judge's findings and recommendations waives appellate review of both factual and legal questions." *Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated: January 24, 2026                    BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge